UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAIRMONT MELVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-0645 (JGP) |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

This matter is before the Court on defendants' motion to dismiss or for summary judgment. Having considered defendants' motion, plaintiff's opposition, and the entire record, the Court will grant summary judgment for defendants.

I.   BACKGROUND

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and challenges defendants' responses to his several requests for information pertaining to himself.

*A. Criminal Division*

In May 2002, plaintiff submitted a FOIA request to the Justice Department's Criminal Division ("Criminal Division") for information about himself. Defendants' Memorandum in Support of Motion to Dismiss and for Summary Judgment ("Defs.' Mot."), Declaration of Kathy Hsu ("Hsu Decl."), ¶ 4 & Ex. 1. The Criminal Division acknowledged receipt of the request, which was assigned Request No. CRM-2002414P, by letter dated June 12, 2002. *Id.*, Ex. 2. With this letter, the Criminal Division instructed plaintiff to submit a "Privacy Act Identification

and Request Form" and a "Criminal Division Privacy Act System of Records" form.  *Id.*  Upon receipt of these completed forms, the Criminal Division would assign a new request number and proceed with its processing.  *Id.*

Plaintiff submitted a completed  "Privacy Act Identification and Request Form" on June 20, 2002.  Hsu Decl. ¶ 6 & Ex. 3.  The Criminal Division confirmed its receipt by letter dated August 16, 2002.  *Id.* ¶ 7 & Ex. 4.  This request was assigned Request No. CRM-200200658P.  *Id.*

Because plaintiff had not indicated which system of records he wanted the Criminal Division to search, Criminal Division staff limited the search to the Central Criminal Division Index File and Associated Records System (JUSTICE/CRM-001).  Hsu Decl. ¶¶ 8, 12.  The search yielded only an index reference in the name of plaintiff's co-defendant (D.J. file no. 12-58-338, index date 1-5-1993).  *Id.* ¶¶ 8, 12.  It was determined that the file was lost.  *Id.* ¶ 8.  The Criminal Division notified plaintiff of this result by letter dated February 11, 2003.  *Id.* ¶ 8 & Ex. 5.  Its decision was affirmed on administrative appeal to the Justice Department's Office of Information and Privacy ("OIP").  *Id.* ¶ 10 & Ex. 7.

### B.  Drug Enforcement Administration

In June 2002, plaintiff submitted a FOIA request to the Drug Enforcement Administration ("DEA") for information about himself.  Defs.' Mot., Declaration of William C. Little, Jr. ("Little Decl."), ¶ 13 & Ex. A.  The DEA confirmed receipt of plaintiff's perfected request, which had been assigned Request No. 02-1518-P, by letter dated August 23, 2002.  *Id.* ¶ 16 & Ex. C.  On August 27, 2002, the DEA notified plaintiff that it located no records responsive to his request.  *Id.* ¶ 17 & Ex. D.  Although plaintiff was informed of his right to appeal this decision, OIP has not received an appeal.  *Id.* ¶ 18.

### C. Bureau of Alcohol, Tobacco, Firearms and Explosives

The Disclosure Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") received plaintiff's FOIA request for information about himself on May 29, 2002. Defs.' Mot., Declaration of Averill P. Graham ("Graham Decl.") ¶ 7.[1]  By letter dated May 31, 2002, the BATFE notified plaintiff that it had located no records responsive to his request. *Id.* ¶ 8. Although plaintiff was informed of his right to appeal this decision, he did not do so. *Id.* ¶ 10.

### D. Federal Bureau of Investigation

In June 1995, plaintiff submitted a FOIA request to the Federal Bureau of Investigation's Washington, D.C. headquarters ("FBIHQ") for information about himself. Defs.' Mot., Declaration of David M. Hardy ("Hardy Decl.") ¶ 5 & Ex. A. By letter dated July 11, 1995, FBIHQ notified plaintiff that a search of its Central Records System yielded no responsive records. *Id.* ¶ 6 & Ex. B. Although plaintiff was informed of his right to appeal this decision, OIP has not received an appeal. *Id.* ¶ 8.

### E. Executive Office for United States Attorneys

In March 2003, plaintiff submitted a request for information about himself to the Executive Office for United States Attorneys ("EOUSA"). Defs.' Mot., Declaration of John F. Boseker ("Boseker Decl.') ¶ 6 & Ex. A. Plaintiff indicated that responsive records likely were maintained by the United States Attorney's Office for the Southern District of Ohio ("USAO/SDOH"). *Id.*, Ex. A at 2. The EOUSA acknowledge receipt of the request, assigned Request No. 03-1042, by letter dated April 15, 2003. *Id.*, ¶ 7 & Ex. B.

On February 4, 2004, the EOUSA released 37 pages of records in full, released 16 pages

---

[1] There are references to exhibits attached to the Graham Declaration, none of which appear on the ECF docket.

in part, and withheld 48 pages in full. Boseker Decl. ¶ 8 & Ex. C. With the instant motion, the EOUSA released in full two additional pages of records. *See* Defs.' Mot., Ex. 9. Plaintiff appealed this decision to OIP. *Id.* ¶ 13 & Ex. E. OIP affirmed the EOUSA's decision, and so notified plaintiff by letter dated August 10, 2004. *Id.* ¶ 14 & Ex. F.

### F. National Archives and Records Administration

Plaintiff alleged that he "moved the various agencies, [including] the National Archives, for release of any and all pertinent documents related to him and the subjects involved" in criminal case numbers CR-2-91-023 and CR-2-91-007 before the United States District Court for the Southern District of Ohio. Compl., ¶ 5. In support of this allegation, he produced copies of correspondence with the National Archives' College Park, Maryland facility and its Great Lakes Region office in Chicago, Illinois. *See* Plaintiff's Answer to Defendants' Motion to Dismiss and for Summary Judgment ("Pl.'s Opp."), Attach. By letter dated March 4, 2002, the College Park office notified plaintiff that the federal courts, where the court records he sought are maintained, are not subject to the FOIA. *Id.*, Attach. (March 4, 2002 letter from J.R. Mathis, FOIA Assistant, Office of General Counsel). Although the Archives did not consider this response a denial, the letter informed plaintiff of his right to appeal the decision by contacting the Deputy Archivist at an address provided in the letter. *Id.* Evidently plaintiff did not pursue an appeal.

Plaintiff next submitted a request to the National Archives' Great Lakes Region office for information pertaining to the same two criminal cases. Pl.'s Opp., Attach. (April 12, 2002 letter). Because his request did not specify that it was a FOIA request, the Archives treated it as it would treat any other request for federal records. *See* Defendants' Reply in Support of Motion to Dismiss and for Summary Judgment ("Defs.' Reply"), Ex. 10 (December 19, 2005 letter from S.B. Rudgers, Asst. Gen. Counsel). Hence, the Great Lakes Region office had no record of

having received a FOIA request from plaintiff.[2] *See id.*; Defs.' Mot., Declaration of Jimmie Greenlee ("Greenlee Decl.") ¶ 4.

## II.  DISCUSSION

### *A.  Summary Judgment Standard*

The Court grants summary judgment if the movant shows, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When evaluating a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *Id.* at 255.  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

### *B.  Failure to Exhaust Administrative Remedies*

A plaintiff "may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies." *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995); *Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases.").  The exhaustion

---

[2]  Defendants' counsel represents that the National Archives produced case file CR-2-91-007. Defs.' Reply at 5 & Ex. 10.  He further represents that the other case file, CR-91-023-2, is located at the United States District Court for the Southern District of Ohio, Eastern Division, and is available to the public. *Id.*  Defendants do not submit a declaration to this effect.

requirement is not jurisdictional.  *See Hidalgo v. Federal Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).  However, it is "generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)).  Absent exhaustion, a FOIA suit is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256 at 1260.

The record demonstrates that neither the DEA, the BATFE, nor the FBIHQ located records responsive to plaintiff's FOIA request.  Plaintiff does not dispute defendants' showing that he filed no administrative appeal of these responses to the OIP.  Rather, he argues that pursuing an appeal of a "no records" response is futile, thus excusing his failure to exhaust his administrative remedies.  Pl.'s Opp. at 7.

"A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies."  *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C.Cir.1999); *see* 5 U.S.C. § 552(a)(6)(A)(i) & (C).  "[A]dministrative exhaustion is not required where it would be futile because of certainty of an adverse decision."  *Armstrong v. Bush*, 807 F.Supp. 816, 819 (D.D.C. 1992) (citation omitted); *cf. Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 404 (7th Cir. 1996) (requiring plaintiff to show that "it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will

---

[3] Defendants move for dismiss on the ground that plaintiff failed to exhaust his administrative remedies with respect to his FOIA requests to the DEA, BATFE, FBI and National Archives.  Because the Court considered matters outside of the pleadings that the parties presented in support of their respective positions, the Court treats this motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(b).

result in a different decision"). In plaintiff's case, there is no such certainty.

An appeal would have afforded each agency an opportunity to review its search and its response. If plaintiff were successful on appeal, an agency may have been ordered to conduct a new search, and a new search may have located responsive records. Because plaintiff chose not to pursue an administrative appeal, no agency had a chance "to correct mistakes made at lower levels and thereby obviate[] unnecessary judicial review." *Oglesby v. United States Dep't of the Army*, 920 F.2d at 61.

### C. Adequacy of Searches

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d at 325 (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.*, 684 F.2d at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542.

#### 1. Criminal Division

Upon receipt of plaintiff's initial request (No. CRM-200200414P), Criminal Division

staff sent plaintiff a "Criminal Division Privacy Act System of Records" form, which lists the systems of records maintained by the Criminal Division. Hsu Decl. ¶ 5. Plaintiff thus had an opportunity to indicate which system or systems of records he wanted to have searched. *Id.* ¶¶ 5, 12 & Ex. 2. Plaintiff did not return the form, however. *Id.* ¶ 6. Upon receipt of the perfected request (No. CRM-200200658), staff searched the Central Criminal Division Index File and Associated Records System (JUSTICE/CRM-001), which "contains the broadest range of information about Criminal Division files." *Id.* ¶ 8 n.2. The search yielded "no responsive records identifiable with plaintiff's name."[4] *Id.* ¶ 12.

Given the nature of plaintiff's FOIA request and his drug conviction, Criminal Division staff concluded that the Narcotics and Dangerous Drug Section was the only other Criminal Division component likely to maintain responsive records. Hsu Decl. ¶ 13. Accordingly, staff caused a search of its system of records. *Id.* Having used plaintiff's name as a search term, that Section's search yielded no responsive records. *Id.* ¶¶ 14-15.

## 2. EOUSA

After determining that the United States Attorney's Office for the Southern District of Ohio ("USAO-SDOH") was the office most likely to maintain records responsive to plaintiff's FOIA request, staff began by searching the Legal Information Office Network System ("LIONS") computer database using plaintiff's name as a search term. Def.'s Mot., Vincent Decl. ¶ 4a. The database search indicated that there were closed criminal records from a case assigned to Assistant United States Attorney Gary L. Spartis. *Id.* ¶ 4b. Mr. Spartis indicated that the records

---

[4] The search did locate an index reference which identified a file potentially responsive to plaintiff's FOIA request. Hsu Decl. ¶ 8. It later was determined that the file, which did not pertain to plaintiff, had been lost. *Id.* ¶¶ 8, 12. The searches that Appellate Section's staff conducted in August 2002 and July 2005 were unsuccessful. *Id.* ¶ 8 n.3.

had been sent to the National Archives and Records Administration, Federal Records Center, in Dayton, Ohio. *Id.* ¶ 4d. Those records were retrieved from the Federal Records Center and forwarded to the EOUSA. *Id.* ¶ 5.

Plaintiff argues, generally, that defendants failed to meet their burden "to establish that they made a 'good faith' effort to conduct the search for the requested records." Pl.'s Opp. at 8. In these circumstances, it is plaintiff who fails to meet his burden. Review of defendants' supporting declarations makes clear that each component conducted a reasonable search designed to locate records responsive to plaintiff's FOIA request. Plaintiff offers no argument, compelling or otherwise, to undermine the sufficiency of defendant's showing.

### D.  *Exemptions*

"The FOIA requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives and Research Ctr. v. Fed. Bureau of Investigation*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). If an agency invokes an exemption, it bears the burden of establishing the applicability of that exemption. 5 U.S.C. § 552(a)(4)(B) (placing "burden [] on the agency to sustain its action"); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989).

### 1.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to information "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc). Information is "'predominantly internal' if it does not 'purport to regulate activities among members of the public or set standards to be followed by agency

personnel in deciding whether to proceed against or take action affecting members of the public.'" *Edmonds v. Fed. Bureau of Investigation*, 272 F.Supp.2d 35, 50 (D.D.C. 2003) (quoting *Cox v. United States Dep't of Justice*, 601 F.2d 1, 5 (D.C. Cir. 1979)). "Predominantly internal documents that deal with trivial administrative matters fall under the 'low 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Exemption is automatic if the material relates to trivial administrative matters of no genuine public interest. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983). Examples of "low 2" exempt material include "administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references." *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979).

The EOUSA withholds information in two records under Exemption 2. *See* Def.'s Mot., Ex. 8 ("*Vaughn* Index") (Doc. Nos. 19, 24). The first document, a "Notice to Close Legal Case File," contains "USAO internal forms" pertaining to the disposition of case records. *Id.* (Doc. No. 19). To the extent that the form contains "purely trivial material," the EOUSA deems it exempt from disclosure as "low 2" material. The second document, a "USAO Criminal Initiation Form/Case File Opening," is withheld to the extent that it contains "purely internal and trivial" material. *Id.* (Doc. No. 24).

Plaintiff asserts no specific challenge to the withholding of information under Exemption 2. Rather, he argues that he "did not request for any internal agency rules and practices, or memos, law enforcement guidelines, procedures and techniques." Pl.'s Opp. at 9. Because his request was for documents related to his criminal case, he considers defendants' Exemption 2 argument "baseless and untenable." *Id.* Plaintiff misunderstands the nature of Exemption 2,

apparently.

Review of defendants' declaration and the *Vaughn* Index satisfies the Court that the material at issue is "low 2" exempt material. It relates to internal practices for opening and closing case files, and thus is trivial and of no interest to the general public.

2. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

a. Deliberative Process

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. United States Dep't of Justice*, 182 F.Supp.2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

The deliberative process privilege is thought to "prevent injury to the quality of agency decisions."  *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. at 151.  Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action.  *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).  Attorney work product can be protected under the deliberative process privilege.  *Heggestad v. United States Dep't of Justice*, 182 F. Supp.2d at 7.

b.  Attorney Work Product

Attorney work product is among the types of material that is not available in discovery. *See, e.g., Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 27 (1983).  The attorney work-product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation.  *Hickman v. Taylor*, 329 U.S. 495 (1947).  Records are properly withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  The privilege also "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories."  *Heggestad v. United States Dep't of Justice*, 182 F. Supp.2d at 8 (citing *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d at 620).

c.  Information Withheld under Exemption 5

There are nine documents withheld in full or in part under Exemption 5.  *See Vaughn* Index (Doc. Nos. 15-20, 24-26).  The descriptions set forth in the *Vaughn* Index make clear that all the information falls within the scope of Exemption 5.  The information includes the prosecuting attorney's handwritten notes (Doc. Nos. 15, 17, 18, 20), inter- or intra-agency

communication regarding the progress and evaluation of the criminal case brought against plaintiff (Doc. Nos. 16, 24), recommendations and instructions for disposition of case records (Doc. No. 19), and communications regarding Supreme Court action on plaintiff's appeal and the filing a brief (Doc. Nos. 25, 26).  The Court concurs that "disclosure [of] this information would reveal pre-decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies."  Boseker Decl. ¶ 24.

### 3. Exemption 7(C)

#### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The relevant records were "maintained in the Criminal Case File System (JUSTICE/USA-007) and in the criminal case file of U.S. v. Clairmont Melville, et al., Criminal Case Number 91-CR-23-ALL, and the derivative 2255 file, Civil No. 97-CV-408.  Mr. Melville was investigated, prosecuted, and convicted of narcotics-related criminal activity in which he

managed several 'crack houses' in the Columbus, Ohio area." Boseker Decl. ¶ 16. Defendant has demonstrated, then, that the relevant records or portions of records qualify as law enforcement records for purposes of Exemption 7. The records were "compiled for law enforcement purposes in order to prosecute Mr. Melville and others." *Id.* ¶ 25.

b. Privacy Interests

In determining whether Exemption 7 applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).

c. Law Enforcement Personnel

The EOUSA withholds the names of federal Special Agents and officers of the Columbus, Ohio Police Department. *See* Boseker Decl. ¶ 27; *Vaughn* Index (Doc. Nos. 2-8, 10-13). Redaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld. *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1987) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible

benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).

"Individual duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm."  Boseker Decl. ¶ 27.

### d.  Third Parties

The agency applies similar justification where it withholds the identities of and personal information about third parties mentioned in law enforcement records.  Boseker Decl. ¶ 26; *see Vaughn* Index (Doc. Nos. 1, 9, 14-16, 21-23, 27).  Again, case law fully supports the EOUSA's decision.  *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Serv., Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding that "names and address of private individuals appearing in files within the ambit of Exemption 7(C) . . . is exempt from disclosure).  Release of such information "could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them," perhaps "lead[ing] to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case."  Boseker Decl. ¶ 26.

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure.  *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Serv., Inc.*

*v. Securities and Exchange Comm'n*, 926 F.2d at 1205-06.  The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence."  *Davis v. United States Dep't of Justice*, 968 F.2d at 1282.  Plaintiff demonstrates no such public interest with respect to the law enforcement personnel or the third parties mentioned in responsive records.  The fact that these third parties may have testified at trial does not diminish their privacy interests.[5]  *See Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994) (law enforcement employee who chooses or is required to testify does not waive personal privacy); *Lardner v. United States Dep't of Justice*, No. 03-0180, 2005 WL 758267, *19 (D.D.C. Mar. 31, 2005) (concluding that name of witness who testified at public trial properly was withheld under Exemption 7(C)).

### E.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of California v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

---

[5]   Plaintiff did not submit to the EOUSA the third parties' authorization or consent to release information to plaintiff.  Boseker Decl. ¶ 29.

Having reviewed the declarations and the *Vaughn* index submitted in support of defendants' motion, the Court concludes that only the exempt records or portions of records have been withheld, and that all reasonably segregable material has been released to plaintiff. The declarations and *Vaughn* index related to these records adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

III.   CONCLUSION

For the reasons discussed herein, the Court will grant defendants' motion for summary judgment. An Order consistent with this Memorandum Opinion will be issued separately on this same date.

**Date: October 12, 2006**                                                          **JOHN GARRETT PENN**
                                                                                    **United States District Judge**